SUPREME COURT OF THE STATE OF NEW YORK
BRONX COUNTY, CRIMINAL TERM, PART H92

HON. TROY K. WEBBER

---------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK

AFFIRMATION IN RESPONSE TO DEFENDANT'S MOTION TO VACATE HER JUDGMENT OF CONVICTION PURSUANT TO CPL § 440.10, AND THE PEOPLE'S REPLY THERETO

– against –

KIMBERLY HANZLIK,

Indictment No. 4344/2007

Defendant.
---------------------------------------------------------X

JONAS M. GELB, an attorney duly admitted to practice before the courts of this State, affirms under penalty of perjury pursuant to CPLR Rule 2106 as follows:

1. I represented defendant subsequent to her indictment, through sentencing.

2. During that period, I made motions on defendant's behalf, both before and after trial, obtained discovery, selected a jury, made an opening statement, examined witnesses, introduced documentary evidence, delivered a summation, participated in the charge conference, provided input during the jury's deliberations, and made a sentencing recommendation after she was convicted.

3. Before trial, I meticulously and repeatedly reviewed all of the documents and discovery materials that had been provided to me by the prosecution.

4. After defendant's conviction, I researched and prepared a motion to set aside her verdict pursuant to CPL § 330.30.

5. After defendant's sentence, I consulted with defendant's appellate counsel, reviewed the draft of appellate counsel's brief, made recommendations for additional argument, or for additional support of arguments posited, reviewed appellate's counsel's application for leave to appeal to the Court of Appeals, and spoke with him about its content.

6. After defendant's application for leave to appeal to the Court of Appeals was denied, and upon request, I forwarded all of my case files to defendant's appellate counsel.

7. On September 23, 2013, I received a telephone call from Assistant District Attorney Robert Sandusky, advising me that defendant had filed a motion to vacate her judgment of conviction on the ground that I rendered ineffective assistance of counsel to her. When A.D.A. Sandusky advised me of the gist of the claims, I replied that I believed that I had cross-examined the accomplice David Thiong about the statement in question. After this conversation, A.D.A. Sandusky e-mailed to me a copy of defendant's motion, affirmation, and memorandum of law, including the police report in question, which I then reviewed.

8. On September 25, 2013, I sent a reply e-mail to A.DA. Sandusky, indicating that, upon my review of defendant's CPL § 440.10 motion, I did not recall ever seeing the DD5 that forms the basis for defendant's ineffective assistance claim. I also indicated that defendant's instant affidavit was not quite accurate, but that those inaccuracies did not implicate the report in question.

9. On September 27, 2013, I had another telephone conversation with A.D.A. Sandusky, in which I told him that, although I no longer have a complete file in this case, and am missing some of the police reports, I nevertheless believed that I had not been provided with a copy of the report in question, though I conceded that I could not state with absolute certainty that it had not been provided, because at that point I had not completely reviewed my entire file, nor seen the trial transcript. I also indicated that a different document commemorating the same event and containing similar information had been marked for identification as defense Exhibit G during the trial, though not introduced into evidence. I made plans to meet with A.D.A. Sandusky and provide that document to him, review the trial transcript, and discuss the issue further.

10. On October 1, 2013, I met with A.D.A. Sandusky, as planned. After reviewing the trial transcript and discussing the case, I told A.D.A. Sandusky that I still believed that I had never

been provided with a copy of the report in question. When A.D.A. Sandusky asked if it was possible that I had been provided with it, but that maybe it had somehow got stuck to another document and inadvertantly overlooked, I replied that it was possible, though I did not believe that that had happened. I also conceded that I could not recall every document that had been provided to me in this case several years ago. I provided A.D.A. Sandusky with a copy of the document that had been marked for identification as defense Exhibit G during the trial.

I further indicated to A.D.A. Sandusky that, based upon my review of the transcript that day, and the questions that were asked to Thiong about his meetings with law enforcement in 1999, I believe that I would have questioned him about the report in question had it been provided to me. Specifically, my review that day of pages 484-490 of the trial transcript shows that I asked Thiong about meetings with law enforcement subsequent to August 1999, to which Thiong replied, in sum and substance, that he did not recall whether there had been any meetings. At that time, I had only the document later identified as defendant's G for identification – an unsigned, handwritten scrap note memorializing a meeting in September 1999, its author unidentified, and the document itself undated.

Finally, I noted that defendant's statement – that I persuaded her not to testify at trial in a meeting with her and co-defendant Meldish's attorney just before trial began (defendant's Affidavit at p.2, ¶ 8) – was not true. In fact, the meeting occurred after the People had rested their case, and I advised defendant not to testify because the prosecution had not called a witness – Luis Corrado – to testify about a false alibi defendant had attempted to concoct, and I believed that, without this evidence, there was no reason for defendant to testify; conversely, if defendant did testify, I advised her that she would be susceptible to damning questions about her attempt to manufacture a false alibi with Corrado, previously conceded by her to law enforcement. Ultimately, she chose not to testify.

11. On October 4, 2013, I received an e-mail from A.D.A. Sandusky, containing a copy of his reply to defendant's motion to set aside her judgment of conviction, without the exhibits. Later that day, I had an opportunity to discuss the report in question with Renee Hill, Esq., one of co-defendant Meldish's attorneys, who indicated that she believed that she had never seen it either.

12. On October 5, 2013, I sent an e-mail to A.D.A. Sandusky, in which I indicated that I was by then, in fact, certain that I had never received it from the prosecution prior to, or at, trial, and that it was not possible, despite defendant's allegations relating to retired detective Harkins, that the document in question was retrieved from my file. I also indicated that my review of Thiong's trial testimony and defendant's Exhibit G, and my conversation with Ms. Hill, ultimately convinced me that I never had seen the DD5 in question. I concluded by asking A.D.A. Sandusky to amend his affirmation to reflect the contents of my correspondence.

13. On October 8, 2013, I sent another e-mail to A.D.A. Sandusky, in which I made clear that I had carefully reviewed, many times over, every document that I had been given as discovery and Rosario material, prior to and during trial, and that I was now certain that no documents had been overlooked. I again maintained that I had never seen the police report in question before A.D.A. Sandusky had sent it to me, that my review of Thiong's testimony and defense Exhibit G at trial allowed me to state this conclusion with absolute certainty, and that my conversation with Ms. Hill further confirmed my belief. I allowed that I could not state that I have had continuous control of my trial files, as they were given to defendant's appellate counsel to use for document review and possible additional witness search. However, I reiterated that all of my recollections, along with the transcript review that I had conducted, allowed me to be certain of this. I once again concluded by asking A.D.A. Sandusky to amend his affirmation, or otherwise make my position known.

14. On October 9 and 10, 2013, I met with A.D.A. Sandusky to prepare this affidavit.

15. I still maintain, based upon all of the foregoing, that I have never received the report in question, and I do not know how it ended up in the case files reviewed by defendant's subsequently retained investigator. *This concedes it was in the file* —

16. During the entire course of my representation of defendant, I zealously represented her to the best of my ability, and was never threatened, intimidated, coerced, or cowed by co-defendant Meldish, nor by his trial attorneys Murray Richman, Esq., and Ms. Hill, to embark on any course of action that would have adversely affected her interests, nor to eschew taking any actions that would have benefitted her.

17. I understand that, by filing a motion accusing me of rendering ineffective assistance during my representation of her, defendant has waived all privilege attached to my representation of her, and I agree to provide complete access to any and all case files in my possession that pertain to my representation of her in this matter if this is litigated further.

Dated: October 10, 2013
      Bronx New York

                                          Respectfully submitted,

                                          Jonas M. Gelb, Esq.
                                          31 Village Gate Way
                                          Nyack, New York 10960
                                          (845)727-7010