UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

KIMBERLY HANZLIK,

                           Petitioner,

   -against-

JOSEPH JOSEPH, Superintendent Bedford Hills
Correctional Facility,

                           Respondent.

------------------------------------------------------------- X

**OPINION AND ORDER
STAYING HABEAS PETITION**

17 Civ. 6577 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Petitioner Kimberly Hanzlik ("Petitioner"), currently incarcerated at the Bedford Hills Correctional Facility in New York, brings this counseled petition for a writ of habeas corpus under 28 U.S.C. § 2254. In 2011, petitioner was convicted of second-degree murder in New York state court and was sentenced to an indeterminate term of twenty years to life in prison. After the petition was filed and came fully briefed, petitioner's counsel received new evidence in the form of recently unsealed plea minutes from the prosecution's central cooperating witness in the case against petitioner. *See* Letter from Irving Cohen, ECF 21. In light of this new evidence, and for the reasons that follow, the Court enters a stay and abeyance of the petition so that petitioner may pursue her claim based on this new evidence in state court.

### Background

      This petition concerns the 1999 murder of Joseph Brown, who was shot and killed at Frenchy's Bar in the Bronx. After the case went cold for nearly a decade, Petitioner and her alleged accomplice, Joseph Meldish ("Meldish"), were convicted by a jury of second-degree murder in 2011. What follows is a brief recitation of the facts relevant to the Court's disposition.

A.  **Factual and Procedural Background**

According to the government's theory of the case, Meldish set out on March 21, 1999 to murder Thomas Brown after the two had a dispute over a loan. On the mistaken belief that Joseph Brown was actually his brother Thomas, Meldish entered Frenchy's Bar in the Bronx, shot and killed Joseph in the crowded bar, and fled in a car driven by David Thiong, a local drug dealer. In interviews conducted immediately after the crime, Thiong twice refused to provide information on his role in the shooting. On a third occasion, Thiong apparently told detectives that he drove Meldish to Frenchy's Bar on the night in question, but that petitioner was not present at the time.[1]

After sitting dormant for nearly a decade, the case was assigned to Detective Tracey, a New York Police Department cold case detective. During his investigation, Tracey turned up two key pieces of evidence that led to the convictions of petitioner and Meldish. First, facing drug charges in Westchester County, Thiong agreed to testify against petitioner and Meldish. Thiong testified at the trial that because Frenchy's Bar was crowded on the night in question, petitioner entered first to scout the victim's location. According to Thiong, once petitioner identified the victim, she returned to the car and relayed the information to Meldish, who traced petitioner's path into the bar and carried out the shooting. It is undisputed that Thiong's testimony was crucial to the government's case. Second, Joseph Brown's wife, who was at Frenchy's Bar that night, identified petitioner as having been present at the bar immediately prior to the shooting, corroborating Thiong's account.[2]

---

[1] This meeting, which was memorialized in a DD5 document drafted by the detective on the case, largely underpins the original petition currently before the Court. Petitioner argues that her trial counsel was constitutionally ineffective for failing to cross examine Thiong based on this document, and for relying instead on the two previous meetings with police that exculpated both Meldish and petitioner. In light of the stay and abeyance entered in this case, the Court expresses no views on the merits of the underlying petition as it was originally presented.
[2] Eileen Brown, Joseph Brown's wife, did not mention seeing anyone suspicious before the shooting until she met with Detective Tracey in 2007, approximately eight years after the shooting. The parties dispute whether her testimony was reliable and consistent with Thiong's, but there is no question that her testimony was crucial to the government's case against petitioner.

2

Largely based on this evidence, petitioner was convicted by the jury of second-degree murder on February 16, 2011, and was sentenced by Justice Webber to an indeterminate term of twenty years to life in prison.³ The Appellate Division unanimously affirmed petitioner's conviction on May 15, 2012, *People v. Hanzlik*, 945 N.Y.S.2d 229 (App. Div. 2012), and the New York Court of Appeals denied her application for leave to appeal on August 20, 2012, *People v. Hanzlik*, 19 N.Y.3d 997 (2012).

On June 25, 2013, petitioner sought review of her conviction in New York state habeas proceedings, pursuant to N.Y. Crim. Proc. § 440.10, principally arguing that her trial counsel was ineffective for failing to cross examine Thiong with his third statement to police, described above, which inculpated Meldish and exculpated petitioner. The New York Supreme Court denied the motion on February 20, 2014, *see* SR 8–17,⁴ and the Appellate Division unanimously affirmed the denial on April 9, 2015, *People v. Hanzlik*, 8 N.Y.S.3d 271 (App. Div. 2015), holding that petitioner did not receive constitutionally deficient assistance of counsel during her trial. The New York Court of Appeals denied petitioner's application for leave to appeal on June 19, 2015. *People v. Hanzlik*, 25 N.Y.3d 1164 (2015).

After retaining new counsel, Petitioner filed a second state habeas petition on March 28, 2016. In addition to the ineffective assistance claim, the second § 440 petition also argued that the prosecutor withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and that petitioner was actually innocent.⁵ The Bronx Supreme Court denied the motion on August 24, 2016, *see* SR 472–79, and this petition followed.

---

³ Meldish was convicted of second-degree murder and sentenced to an indeterminate term of 25 years to life in prison.
⁴ References to "SR" refer to the State Court Record submitted by respondent. *See* Response, ECF 14.
⁵ Unlike federal courts, which have not explicitly recognized a freestanding claim of actual innocence in federal habeas proceedings, *see McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."), such relief is available in New York state habeas proceedings, *see People v. Hamilton*, 979 N.Y.S.2d 97, 108 (App. Div. 2014) ("Thus, we conclude that a freestanding claim of actual innocence may be addressed pursuant to CPL 440.10(1)(h), which provides for vacating a judgment which was obtained in violation of an accused's constitutional rights."). However,

3

## B. New Evidence

In a letter dated May 9, 2018, petitioner's counsel raised new evidence central to petitioner's claim. *See* Letter from Irving Cohen, ECF 21. The letter states that on May 4, 2018, petitioner's counsel received—for the first time—an unsealed transcript of a guilty plea entered by Thiong in Westchester County on drug charges prior to petitioner's trial. According to a separate letter submitted by respondent on May 14, 2018, both parties received the transcript from the Bronx District Attorney's Office in early May 2018. *See* Letter from Lisa E. Fleishmann, ECF 22, at 1. Apparently the Bronx District Attorney's Office recently received the unsealed transcript as part of petitioner's post-judgment motions. *Id.* Because the transcript surfaced recently, this evidence was not before the state court when it considered petitioner's *Brady* claim in her second § 440 petition. Taken with records from the trial, the transcript of Thiong's plea casts doubt on petitioner's state court proceedings and requires the Court to enter a stay and abeyance of this petition to allow petitioner to exhaust her new claims in state court.

### 1. Background

A central issue at petitioner's trial was Thiong's credibility. He was the prosecution's star cooperating witness, and his testimony placed petitioner right at the heart of Joseph Brown's murder. According to Thiong, petitioner scouted Joseph Brown's location in the crowded bar and reported that location to Meldish, who carried out the shooting. Together with the testimony of Eileen Brown, the victim's wife, Thiong's testimony was crucial to the prosecution's case.

One of petitioner's central defense strategies was to impeach Thiong's credibility by arguing that his testimony was tainted by the grant of immunity on the Bronx murder charge.

---

the Supreme Court has recognized that "a credible showing of actual innocence may allow prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief." *Id.*

4

But petitioner also attempted to connect Thiong's cooperation in the murder case to his plea to misdemeanor drug charges in Westchester County. During the trial, petitioner's trial counsel sought discovery of any materials related to Thiong's plea deal with the Westchester County District Attorney's Office. *See* Letter from Irving Cohen, ECF 21, Ex. 4, at 493. During a colloquy with the Court, Assistant District Attorney Scaccia represented that the Westchester plea deal, in which Thiong pled down to a misdemeanor drug charge, was "not any deal I made with him, that's what Westchester gave him on this case." *Id.* The Court then asked more directly: "So, the question Ms. Scaccia to you is, whether the deal included . . . the time served and a misdemeanor in Westchester or not." *Id.* at 494. Ms. Scaccia responded: "That was *their* deal with him." *Id.* (emphasis added). In short, the prosecutor represented to the Court that Thiong's plea deal on drug charges in Westchester County was unrelated to his cooperation in the murder trial.

2. Thiong's Plea Transcript

Thiong's plea minutes, which were recently unsealed and delivered to petitioner's counsel only weeks ago, demonstrate that this was not accurate. During Thiong's plea hearing in Westchester County, the judge described the plea agreement as follows:

> The understanding between all parties, which would include the Bronx District Attorney's Office, is as follows: This defendant is to give full and complete cooperation to the Bronx District Attorney's Office in an ongoing homicide investigation. This shall include but is not necessarily limited to his truthful, full, truthful and full testimony before the Bronx County Grand Jury in the near future. And of course if necessary trial testimony. If his cooperation is completed, we will be, we will, based on a representation of the Bronx District Attorney's Office that that was so, allow him to withdraw his previously entered plea to criminal possession of controlled substance in the fifth degree, have him withdraw that and just proceed to sentence on the possession seventh.

5

*See* Letter from Irving Cohen, ECF 21, Ex. 1, at 5. During the plea, Thiong's counsel stated that "one of the reasons he's pleading today is with the understanding that he's going to receive full immunity on the Bronx case." *Id.* at 7. It was also agreed that "once [Thiong] testifie[d] before the grand jury" in petitioner's case, he would be released on bail in the Westchester County drug case. *Id.* at 8. The deal also included a condition that "if things [fell] apart in the Bronx case . . . Mr. Thiong would have the right to withdraw his plea" in Westchester. *Id.* at 9. Finally, during his allocution, Thiong was asked whether he understood what his "expectations [were] with regard to the Bronx District Attorney's Office and what your sentencing commitments would be," and he responded in the affirmative. *Id.* at 17.

These portions of Thiong's plea transcript indicate that, contrary to the prosecutor's representations to the New York Supreme Court, Thiong's cooperation was secured through a global plea agreement that covered the Westchester County drug charges and the Bronx murder case against petitioner. But these materials, which clearly bear on Thiong's credibility, were not disclosed to petitioner before trial, and were apparently not revealed until years after petitioner's conviction and multiple rounds of appellate review.

### Discussion

Petitioner urges the Court to consider this new evidence in evaluating her petition, both as "a separate ground for granting the writ," and as evidence reinforcing her claim that she is actually innocent.[6] *See* Letter from Irving Cohen, ECF 21, at 4. But in federal habeas proceedings of this kind, I am not permitted to consider materials that have not yet been reviewed by the state court that adjudicated petitioner's claim. As the Supreme Court explained

---

[6] In a letter dated May 14, 2018, respondent argues that the newly discovered plea transcript simply "evidences that Thiong's cooperation agreement was more generous than the prosecutor had represented at trial. But proof that Thiong had a greater incentive to testify is not affirmative proof of petitioner's innocence." Letter from Lisa E. Fleischmann, ECF 22, at 2. Although the Court has reservations about this position, as explained herein, my review is limited to the evidence that was before the state court that adjudicated petitioner's claim.

in *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." The Supreme Court reached this conclusion based on the text of § 2254(d)(1) and "the broader context of the statute as a whole, which demonstrates Congress' intent to channel petitioners' claims first to the state courts." *Id.* at 181–82 (internal quotation marks omitted) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). I am bound by this precedent.

Thus, the proper course is to stay and abey these habeas proceedings to allow petitioner "to present to the state court [her] *Brady* claim," including the new materials contained in Thiong's plea transcript. *Gonzalez v. Wong*, 667 F.3d 965, 980 (9th Cir. 2011). This is similar to the path followed by the Ninth Circuit in *Gonzalez v. Wong*, *see id.*, and advanced by Justice Breyer in his concurring opinion in *Pinholster*, in which he wrote that a petitioner "can always return to state court presenting new evidence not previously presented," *Pinholster*, 563 U.S. at 206 (Breyer, J., concurring in part and dissenting in part). Similar to the situation the Ninth Circuit faced in *Gonzalez*, petitioner "raised and the state court explicitly rejected a *Brady* claim," and "the suggestion that [petitioner] has presented a 'new claim' inherently invites questions regarding exhaustion." *Gonzalez*, 667 F.3d at 979.

With the inclusion of this new evidence, petitioner has a colorable—and potentially meritorious—claim under *Brady v. Maryland*, 373 U.S. at 87, which requires a prosecutor to turn over potentially exculpatory evidence to the defense before trial, and *Giglio v. United States*, 405 U.S. 150, 153–54 (1972), which extended the *Brady* rule to impeachment evidence. Of course, petitioner will ultimately have to demonstrate that, taken cumulatively with the remainder of the evidence, there is a "reasonable probability" that the result of her case
7

would have been different. *Kyles v. Whitley*, 514 U.S. 419, 434–35 (1995). But whether petitioner can do so must be resolved in the first instance by the state court.[7]

Finally, the stay and abey process adopted here is the same one that the Supreme Court recognized in *Rhines v. Weber*, which considered a habeas petition with unexhausted claims.[8] 544 U.S. 269, 278 (2005). In *Rhines*, the Supreme Court held that "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics[,] . . . the district court should stay, rather than dismiss," the petition. *Id.* Because petitioner was unaware of Thiong's plea transcript, which was only recently unsealed and turned over to petitioner's counsel, and because petitioner has a potentially meritorious claim, the stay and abey process is the appropriate course. Doing so reflects "petitioner's interest in obtaining federal review of his claims," *id.*, and preserves the state's role as the initial arbiter of habeas claims, *see Pinholster*, 563 U.S. at 181–82.

Finally, as the Supreme Court explained in *Rhines*, I retain discretion to structure the stay in a manner that reflects the "timeliness concerns" of the federal habeas statute. *Rhines*, 544 U.S. at 277–78. Accordingly, the stay is conditioned on petitioner filing her *Brady* claim in state court within 30 days of the filing of this Order. If petitioner wishes to renew this petition following the completion of the state court's review, she must do so within 30 days after the state court proceedings are exhausted.

---

[7] The § 440 court may also wish to consider whether sanctions or other relief is appropriate based on the serious allegation of prosecutorial misconduct.
[8] Petitioner's claim is not, strictly speaking, an unexhausted claim covered by *Rhines v. Weber*, for as the Ninth Circuit implicitly recognized in *Gonzalez*, petitioner's claim also rests on recently discovered *new evidence* presented for the first time to the federal habeas court. *Gonzalez*, 667 F.3d at 980.

8

## Conclusion

For the reasons stated herein, the Court enters a stay and abeyance of the petition to allow petitioner to pursue her unexhausted claims in state court. The stay is conditioned on petitioner pursuing relief in the state court within 30 days of the filing of this Order, and petitioner may move to renew the petition, if necessary, within 30 after the state court proceedings are exhausted.

SO ORDERED.

Dated: May __, 2018
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge